OPINION
Defendant, David Condon, appeals from his conviction and sentence for child endangerment.
David Condon was initially indicted on one count of rape involving a child under thirteen years of age. The victim is Condon's six year old mentally handicapped son, who functions at the level of a two year old. The boy does not have control over his bowels and still wears diapers. The investigation into Condon's actions commenced when the mother of the victim discovered bruises on the child's buttocks, and doctors discovered bruising around the child's anus.
Condon's initial explanation to police was that he had paddled his son with a board because he defecated in his pants. Condon later confessed to placing a wooden dowel in between his son's buttocks. Prior to trial, Condon filed a motion to suppress the statements he made to police. The trial court overruled that motion to suppress following a hearing.
Thereafter, an amended indictment was returned charging Condon with attempted rape. Pursuant to a negotiated plea agreement, Condon entered a no contest plea to one count of child endangerment: torturing or cruelly abusing a child which results in serious physical harm. R.C.2919.22(B)(2), (E)(3). The State agreed not to file additional charges, recommended a sentence of seven years imprisonment, and opposed judicial release.
Upon entry of his no contest plea, the trial court found Condon guilty and sentenced him to seven years imprisonment. Condon has timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE OCTOBER 21, 1998, STATEMENTS GIVEN WITHOUT BENEFIT OF MIRANDA WARNINGS.
 The evidence adduced at the suppression hearing demonstrates that after Condon was arrested he was questioned at the Darke County Sheriff's Office on October 20, 1998, at 8:18 p.m. Det. Green reviewed the Miranda rights with Condon before questioning him. Det. Whittaker was also present. Condon acknowledged that he understood his rights, and he executed a written waiver of those rights. Condon then spoke with police, denying involvement in any criminal conduct. At the conclusion of that interview, arrangements were made for Condon to take a C.V.S.A. (computer voice stress analyzer), a form of lie detector, the next morning.
The following morning, October 21, 1998, at around 9:00 a.m., Det. Ford from the Preble County Sheriff's Office administered the C.V.S.A. test to Condon. This took place at the Darke County Sheriff's Office.
Before beginning the test, Det. Ford had Condon sign a written consent form. Although that consent form incorporates the Miranda rights, Det.Ford did not read the form to Condon or go over each and every one ofthe Miranda rights with Condon, point by point. Instead, Det. Ford gavea brief explanation of the consent form to Condon, emphasizing that hisdecision to take the test must be voluntary, that nobody could force himto take the test, that he could speak to an attorney before taking thetest if he so desired, and that he could stop answering questions and endthe test at anytime.
At the conclusion of the C.V.S.A. test, Det. Ford informed Det. Whittaker that Condon was being deceptive in answering questions. Det. Whittaker immediately began interrogating Condon at 10:15 a.m. on October 21, 1998, without again advising Condon of his Miranda rights. Afterbeing confronted by Det. Whittaker with the fact that he had failed theC.V.S.A. test, Condon made incriminating admissions that he had placed awooden stick in his son's rectum in an effort to stop the boy fromdefecating in his pants.
Condon argues that Det. Whittaker should have re-advised him of hisMiranda rights before questioning him on October 21, 1998, because theoriginal Miranda warnings given to Condon the night before by Det. Greenwere too stale to permit Det. Whittaker to question him some fourteenhours later.
Because custodial interrogation is inherently coercive, incriminating statements which are the product of such questioning are not admissible unless Miranda warnings precede that questioning. Miranda v. Arizona(1966), 384 U.S. 436. Those warnings are indispensable in overcoming thepressures of custodial interrogation and insuring that the individualknows he is free to exercise his right to remain silent at that time.Id. This suggests that the warnings should be sufficiently proximate intime and place to any interrogation so as to preserve the relief fromcustodial pressures that the warnings are intended to create. State v.Butler (September 18, 1998), Montgomery App. No. 16852, unreported.
When an individual to whom prior Miranda warnings were properly givenis subsequently interrogated without being re-advised of his Mirandarights, the critical issue is whether that individual neverthelessremained aware of his rights at the time of the subsequentinterrogation. Butler, supra. In making that determination, courts must consider the totality of the circumstances, including:
 (1) [T]he length of time between the giving of the first warnings and subsequent interrogation, * * *
 (2) whether the warnings and the subsequent interrogation were given in the same or different places, * * *
 (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, * * *
 (4) the extent to which the subsequent statement differed from any previous statements; * * * [and]
 (5) the apparent intellectual and emotional state of the suspect.
 State v. Roberts (1987), 32 Ohio St.3d 225, 232.
Condon was properly administered the Miranda warnings at 8:18 p.m. onOctober 20, 1998. He acknowledged at that time that he understood thosewarnings. Some fourteen hours later, at 10:15 a.m. on October 21, 1998,Condon was interrogated by police without being re-advised of hisMiranda rights. Although Condon was not then reminded of his Mirandarights, the passage of time here, some fourteen hours, is not so great asto cause Condon to forget or lose an understanding of his rights.
The officer who advised Condon about his rights on the night of October 20, 1998, is not the same officer who questioned him on the morning of October 21, 1998, but the location was the same and the questioning related to the same offense. Moreover, there is nothing to indicate that Condon's intellectual or emotional state was such as to impair his ability to understand his rights on either October 20 or October 21, 1998. Furthermore, the C.V.S.A. test and the warnings which were given to Condon in conjunction with that test do not detract from the fullMiranda warnings given to Condon on the night of October 20, 1998, whichCondon acknowledged he understood.
On the totality of these facts and circumstances, we conclude that the evidence fails to demonstrate that Condon was unaware of his Mirandarights when police questioned him on the morning of October 21, 1998.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO SUPPRESS BOTH INTERVIEWS OF THE DEFENDANT AS THEY CONTAINED NUMEROUS REFERENCES TO TAKING A LIE DETECTOR TEST AND THE RESULTS THEREOF.
 Condon argues that the transcripts of his interviews with police were not admissible at trial because they contain repeated references to a C.V.S.A. or lie detector test and the results of that test, and the parties did not stipulate to the admissibility of such tests. See State v. Souel (1978), 53 Ohio St.2d 123.
This argument is more of a motion in limine challenging future admissibility of evidence at trial than it is a suppression issue. The record indicates that the State had agreed with the defense that all references in Condon's statements regarding the C.V.S.A. test and the results thereof would be redacted before being offered at trial. Prior to commencing the suppression hearing, the trial court indicated that what was left for its determination on suppression issues was other statements by Condon, which presumably do not contain C.V.S.A. references. After the trial court ruled that Condon's statements were not subject to suppression because of a Miranda violation, the State suppliedthe defense with a version of Condon's statements to police it proposedto use at trial, with the C.V.S.A. references deleted. There were nofurther objections by Condon, and the matter concerning the C.V.S.A.references was never presented to the court for determination nor ruledupon at trial because Condon proceeded to enter a no contest plea to areduced charge. Clearly, this issue has not been preserved for appellatereview.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO SEVEN (7) YEARS IN PRISON.
 In his third and final assignment of error Condon argues that the trial court's sentence was not supported by the record and is contrary to law. We disagree.
As part of a negotiated plea agreement, Condon entered a no contest plea to a charge of child endangerment: torturing or cruelly abusing his six year old son resulting in serious physical harm. R.C. 2919.22(B)(2). This is a felony of the second degree, R.C. 2919.22(E)(3), for which the potential penalty is two, three, four, five, six, seven or eight years of imprisonment. R.C. 2929.14. As part of the plea agreement the State recommended that Condon serve seven years in prison. Moreover, the trial court clearly indicated to Condon at the time he entered his no contest plea that it would impose the recommended seven year sentence upon acceptance of his plea. Condon indicated that he understood, and he did not object.
In cases involving second degree felonies, a presumption exists that a prison term is necessary in order to comply with the principles and purposes of sentencing. R.C. 2929.13(D). When a trial court imposes a prison term upon a defendant who has not served time in prison before, there is also a presumption that the minimum term, two years in this case, should be imposed. R.C. 2929.14(B). That presumption can be overcome, and a longer term of imprisonment imposed, where the trial court finds, as it did in this case, that the "shortest prison term would demean the seriousness of the offender's conduct." R.C. 2929.14(B).
The trial court's finding in this case that the shortest prison term would demean the seriousness of this offense, is fully supported by the record. In making that finding the trial court found the existence of several factors which both make this offense more serious than conduct normally constituting the offense, and make it likely that Condon will commit future crimes.
As to those factors making this offense "more serious," the trial court found that: the physical or mental injury suffered by the victim was exacerbated because of the physical or mental condition or age of the victim, R.C. 2929.12(B)(1); the victim suffered serious physical or psychological harm, R.C. 2929.12(B)(2); and the offender's relationship with the victim facilitated the offense, R.C. 2929.12(B)(6). The trial court also found that the offender held a position of trust and the offense related to that position of trust, R.C. 2929.12(B)(3). Condon argues, and the State agrees, however, that this particular finding is invalid because "position of trust" does not relate to parental authority over a child but rather a position of trust "in the community." The trial court found no factors making this offense "less serious." See R.C. 2929.12(C).
As for those factors demonstrating that Condon is likely to commit future crimes, the trial court found that: the offender has a history of criminal convictions, R.C. 2929.12(D)(2); the offender has not responded favorably to sanctions previously imposed for criminal convictions, R.C.2929.12(D)(3); the offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense and the offender refuses to acknowledge that pattern, R.C. 2929.12(D)(4); and the offender shows no genuine remorse for the offense, R.C. 2929.12(D)(5).
Condon challenges the finding that he lacks remorse on the basis that he "said he was sorry" at the time of sentencing. An expression of remorse made for the first time immediately prior to the imposition of sentence, however, may be motivated not so much by genuine feelings and emotions as it is by a desire for a lenient sentence. The trial court found only one factor indicating that Condon is not likely to commit future crimes: prior to committing this offense Condon had not been adjudicated a delinquent child, R.C. 2929.12(E)(1).
The trial court made the necessary findings in this case that are a prerequisite to imposing a prison sentence longer than the minimum term. Moreover, this record supports those findings. Accordingly, we cannot find by clear and convincing evidence that the sentence imposed by the trial court is contrary to law. R.C. 2953.08(G).
The third assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.